**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
PATRICIA SCHWETZ,

                                    Plaintiff,

                                                            Case No.: 21-CV-3396(PKC)(LGD)

                 - against -

THE BOARD OF COOPERATIVE
 EDUCATIONAL SERVICES OF NASSAU
COUNTY**,**
                                    Defendant.
-----------------------------------------------------------------X


## **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**


Dated: May 26, 2023


                                                    _____/S/_____

                                                    Yuting Li, Esq.

                                                    DANNY GRACE PLLC
                                                    *Attorneys for Plaintiff*
                                                    225 Broadway,
                                                             Suite 1200
                                                    New York, NY 1000

Date of service upon Defendant: May 26, 2023


                                    I

II

**Table of Contents**

Table of Authorities ...................................................................................................... i

PRELIMINARY STATEMENT ................................................................................... 1

COUNTERSTATEMENT OF MATERIAL FACTS .................................................... 1

   I.    Plaintiff's Complaint of Defendant's Discrimination .......................................... 2

   II.   Retaliation, Complaint of Retaliation and Further Retaliation ........................... 2

     A.   Being Identified as "Lower than Whale Shit" .............................................. 3

     B.   Complaint of Retaliation and Further Retaliation ........................................ 3

     C.   End of Year Evaluation for School Year 2018-2019 ................................... 5

     D.   Further Complaint, and Continued Retaliation ............................................ 5

     E.   Continued Discrimination and Retaliation: Being Excluded from Meetings ............. 5

     F.   Continued Retaliation: Reassignment and Termination ............................... 6

     G.   Pre-textual Reasons: Being Reviewed Under Magnifier & Termination .................. 6

     III.   Failure to Follow BOCES' Policy to Investigate Plaintiff's Complaints ................... 9

LEGAL STANDARD THE HARSH REMEDY OF SUMMARY JUDGMENT ....................... 10

ARGUMENT ................................................................................................................ 11

   I.    Plaintiff's Claims Under Title VII Meet the Procedural Requirement ............................ 11

     A.   Plaintiff Timely Filed Her EEOC Charge .................................................. 11

     B.   Defendant Waives Its Defense ................................................................... 12

   II.   Plaintiff's Claims Under the NYSHRL Meet the Notice of Claim Requirement Per N.Y. Educ. Law § 3813 .................................................................................... 13

   III.   Discrimination ..................................................................................................... 14

   IV.   Hostile Working Environment ............................................................................ 18

   V.    Retaliation ........................................................................................................... 19

     A.   Plaintiff Engaged in Protected Activity and Defendant Had Knowledge ................... 19

     B.   Plaintiff was Subjected to an Adverse Action: Retaliatory Hostile Working Environment, Termination, and Being Blacklisted ........................................ 21

     C.   Causation ................................................................................................... 22

     D.   Defendant's Proffered Reason is Pretextual .............................................. 23

CONCLUSION ............................................................................................................. 25

## **Table of Authorities**

**Cases**

Anyanwu v. City of New York, 2013 WL 5193990 (S.D.N.Y. Sept. 16, 2013) ......................... 11

Bennett v. Hofstra Univ., 842 F.Supp.2d 489 (E.D.N.Y. 2021) .................................................. 20

Berrie v. Bd. Of Educ. of Port Chester-Rye Union Free Sch. Dist., No. 14-CV-6416 (CS), 2017
        WL 2374363 (S.D.N.Y. May 31, 2017) ................................................................... 12

Board of Educ. v. Wagner Constr. Corp., 37 N.Y.2d 283(1975) ................................................ 13

Brash v. Richards, 195 A.D.3d 582, 149 N.Y.S.3d 560 (2021).......................................... 13, 14

Bucalo v. E. Hampton Union Free Sch. Dist., 351 F. Supp. 2d 33 (E.D.N.Y. 2005). ................. 14

Chambers v. TRM Copy Centers Corp., 43 F.3d 29 (2d Cir. 1994)............................................ 24

Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir.2001) .......................................................... 22

Collins v. Cohen Potani, No. 04 CV 8983(KMW)(MHD), 2008 U.S. Dist. LEXIS 58047 (S.D.N.Y.
        July 30, 2008)......................................................................................................... 17

Cronin v. Aetna Life Ins. Co., 46 F.3d 196 (2d Cir. 1995)......................................................... 23

Cruz v. Coach Stores, Inc. 202 F.3d 560 (2d Cir. 2000) ........................................................... 19

Davis-Garett v. Urb. Outfitters, Inc., 921 F.3d 30 (2d Cir. 2019) ............................................. 15

DeLuca v. Allied Domecq Quick Serv. Restaurants, No. 03-CV-5142(JFB)(AKT), 2006 WL
        1662611 (E.D.N.Y. June 13, 2006). ...................................................................... 22

Ewing v Coca Cola Bottling Co. of N.Y., Inc., No. 00-CV-7020 (CM), 2001 WL 767070(S.D.N.Y.
        June 25, 2001)........................................................................................................ 18

Fort Bend Cnty., Texas v. Davis, 204 L. Ed. 2d 116, 139 S. Ct. 1843 (2019) ............................ 12

Fowlkes v. Ironworkers Loc. 40, 790 F.3d 378 (2d Cir. 2015). ................................................. 12

Gallo v. Prudential Residential Serv, 22 F.3d 1219 (2d Cir. 1994)............................................ 10

Graham v. Long Island R.R., 230 F.3d. 34 (2d. Cir. 2000). ....................................................... 16

i

Howley *v. Town of Stratford*, 217 F.3d 141, (2d Cir. 2000)........................................................ 18

Jeffreys v. City of New York, 426 F.3d 549 (2d Cir. 2005). ...................................................... 10

Jute v. Hamilton Sundstrand Corp., 420 F.3d 166 (2d Cir. 2005). ....................................... 12, 19

Karibian v. Columbia University, 14 F.3d 773 (2d Cir. 1994). ................................................. 18

Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10 (2d Cir. 2013) ..... 20

Kushner v. Valenti, 285 F.Supp.2d 314 (E.D.N.Y. 2003) ....................................................... 14

Lloyd v. Children's Hosp. of Philadelphia, No. 2:19-CV-02775-JDW, 2023 WL 2940229 (E.D. Pa. Apr. 13, 2023) .................................................................................................... 20

Lopez v. S.B. Thomas, Inc., 831 F.2d 1184 (2d Cir.1987) ........................................................ 18

Matter of Saranac Lake Cent. Sch. Dist. v. New York State Div. of Human Rights, 226 A.D.2d 794 (3d Dept. 1996). .................................................................................................. 13

McDonnell Douglas Corp. v Green, 411 US 792, 93 S Ct 1817(1973). ..................................... 15

Mennella v. Uniondale Union Free Sch. Dist., 287 A.D.2d 636(2d Dept. 2001) .......................... 13

Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57 (1986). .............................................................. 15

Mexico Infrastructure Fin., LLC v. Corp. of Hamilton, No. 17-CV-6424 (VSB), 2020 WL 5646107 (S.D.N.Y. Sept. 21, 2020) .......................................................................................... 10

Pantchenko v. C. B. Dolge Co., 581 F.2d 1052 (2d Cir. 1978) ................................................. 12

Papelino v. Albany Coll. of Pharmacy of Union Univ., 633 F.3d 81 (2d Cir. 2011) .................. 21

Parochial Bus Sys., Inc. v. Bd. of Educ. of City of New York, 60 N.Y.2d 539, 458 N.E.2d 1241 (1983). ......................................................................................................................... 13

Pope v. Hempstead Union Free Sch. Dist., 194 A.D.2d 654(2d Dept. 1993 ................................ 13

Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170 (2d Cir. 1996). ............................................ 19

Richardson v. New York State Dept. of Corr. Servs., 180 F.3d. 426 (2d. Cir. 1999). ................ 16

Richardson-Holness v. Alexander, 196 F. Supp. 3d 364  (E.D.N.Y. 2016) ................................ 17

Russell v. County of Nassau, 696 F. Supp. 2d 213 (E.D.N.Y. 2010)........................................... 20

Salamon v. Our Lady of Victory Hosp., 514 F.3d 217, 226 (2d Cir. 2008) ................................ 19

Sanderson v. Leg Apparel LLC, No. 1:19-CV-8423-GHW, 2023 WL 2753200 (S.D.N.Y. Mar. 31, 2023) ....................................................................................................................... 17, 24

Sassaman v Gamache, 566 F.3d 307(2d Cir. 2009)....................................................................... 25

Schaper v. Bronx Lebanon Hosp. Ctr., 408 F. Supp. 3d 379 (S.D.N.Y. 2019) ..................... 19, 21

Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597(2d Cir. 2006) ............................................. 18

Silver v. Mohasco Corp., 602 F.2d 1083(2d Cir. 1979). ............................................................. 12

Sylla v. New York City Dep't of Educ., No. 18-cv-6524(RPK)(MMH), 2023 WL 2667072 (E.D.N.Y. Mar. 28, 2023) ..................................................................................................... 10

Taddeo v. L.M. Berry & Co., 526 Fed. Appx. 121 (2d Cir. 2013). ........................................ 11, 16

Tepperwein v. Entergy Nuclear Operations, Inc., 663 F.3d 556(2d Cir. 2011). ......................... 21

Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241 (2d Cir. 2004). ................................ 10

Weinstock v. Colombia Univ., 224 F.3d 33 (2d Cir. 2000)........................................................... 15

Zann Kwan v. Andalex Grp., LLC, 737 F.3d 834 (2d Cir. 2013). ................................................ 19

## PRELIMINARY STATEMENT

Plaintiff, Patricia Schwetz ("Plaintiff" or "Ms. Schwetz"), a female, respectfully submits this Memorandum of Law in Opposition to the Motion for Summary Judgment made by Defendant The Board of Cooperative Educational Services of Nassau County ("BOCES"). As set forth below and in the accompanying papers, the record is replete with material disputes of fact and Defendant has failed to carry their burden for summary judgment on any of Plaintiff's claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the New York State Human Rights Law, New York Executive Law §§ 290 et seq. ("NYHRL"). Thus, Defendant's motion should be denied and Ms. Schwetz's claims should be allowed to be proceed to trial.

## COUNTERSTATEMENT OF MATERIAL FACTS

Plaintiff respectfully refers the Court to Plaintiff's Counterstatement of Material Facts pursuant to Local Civil Rule 56.1, the Defendant's undisputed statement per Local Civil Rule 56.1, Declaration of Plaintiff, Declaration of Yuting Li, and all exhibits annexed thereto for a full recitation of the facts relevant to the determination of this motion. Plaintiff summarizes the facts in brief as follows:

Plaintiff began working for Defendant in 1999, until her wrongful termination on June 30, 2020. (Schwetz Decl.¶1) Plaintiff' each promotion came with an increase both in salary and benefits. (Plaintiff's Counterstatement of Disputed Facts, hereafter "Pl's") (Pl's ¶122) On September 1, 2018, she was promoted to a tenure-tracked position as an Executive Director ("ED") of the Special Education Department of Defendant ("SE"). Id. at ¶3.

The SE Department is one of Defendant's largest departments, comprising ten buildings. Id. at ¶ 126. As ED, Plaintiff oversaw more than one thousand six hundred employees. (Schwetz Dep. 61:24 – 63:24). Dr. Roxanne Garcia France was Plaintiff's direct supervisor. Pl's ¶¶5-7.

## I.     Plaintiff's Complaint of Defendant's Discrimination

When seeking to fill a Supervisor I position, the Hiring Committee of the SE Department interviewed several candidates. Ms. Barbara Longo ("Longo") and Mr. Kenneth Kroog ("Kroog") and Plaintiff were members of the Hiring Committee. Pl's ¶130. All of them previously held the position of Supervisor I. The Supervisor I position was vacant due to Kroog's promotion to Executive Manager. Id. at ¶¶ 129-30. After the interview, the Hiring Committee concluded that Ms. Jeanne Stutz ("Stutz") was the most qualified candidate. Id. Thus, following the hiring protocols, Plaintiff advanced her for the superintendent-level interview. Id. at ¶131. Ms. Gloria Grosso ("Grosso") Grosso called Stutz and offered her the position of Supervisor I. Id. ¶131.

On or around May 1, 2019, Dr. France told Plaintiff that Dr. Robert Dillion wanted to rescind the offer because Ms. Stutz's certification of School District Administrator ("SDA") was not a qualifying credential. Id. at ¶132.Plaintiff told Dr. France SDA is one of NYS Administrative Certifications. Plaintiff also went back to her computer and printed out the credentialing requirements of NYS Administrative Certification. Id. In response, Dr. France directed Plaintiff to talk to Dr. Dillion. Id. at ¶135.

Plaintiff told Dr. Dillion that Ms. Stutz's SDA was an appropriate credential of NYS Administrative Certification and stated that "I do not want to challenge you, but I have concerns about this being discriminatory." Id. at ¶ 140. Plaintiff also told Dr. Dillion that the former male Supervisor I also had SDA, the same credential as Ms. Stutz. Id. In response, Dr. Dillion asked Plaintiff not to challenge him and directed Plaintiff to leave his office. Id. at ¶141.

Plaintiff reasonably believed the decision to rescind the offer was discriminatory. Id. at 134-139. Plaintiff witnessed Dr. Dillion poke fun and joke about Dr. Lydia Begley (female) and called Ms. Selma Stoddard ("Stoddard") "little lady, little girl." Id.

## II.     Retaliation, Complaint of Retaliation and Further Retaliation

Following Plaintiff's complaint to Dr. Dillion of his discriminatory employment practice, Plaintiff was subjected to retaliation and a hostile working environment. From that point on, Plaintiff was placed under a magnifying glass by Dr. Dillion until her wrongful termination.

### A.  Being Identified as "Lower than Whale Shit"

On May 10 or 11, 2019, Plaintiff was required to have a meeting with Dr. France and Dr. Dillion. Before this meeting, Dr. France told Plaintiff that Dr. Dillion was furious at Plaintiff because of her complaint of discrimination. (Schwetz Dep. 136:22- 137:15).

During the meeting, Dr. Dillon was very red with a look of disgust on his face. ( Schwetz Dep. 136:12- 21). Dr. Dillion would closely watch Plaintiff and said to Plaintiff that, "[i]n life, there is shit." "Shit, then there is whale shit, and in my book you're under that. You are lower than whale shit to me." (Schwetz Dep.  131:24 - 132:17). Dr. Dillon also directed Plaintiff to keep it to herself and be quiet about it in order to have a soft landing. Id. at ¶¶147,149, Dr. Dillion threatened Plaintiff's job safety for the first time and alleged that he would revisit whether she was qualified for her position in January 2020. Pl's ¶151.Indeed, Dr. Dillion revisited Plaintiff's qualifications in January 2020, and reassigned her, then terminated her without reason. Id. at ¶¶ 250-52. After being asked by Plaintiff asked, Dr. Dillion provided Plaintiff with a pre-textual basis. Id.

When Plaintiff tried to respond, Dr. Dillion directed Plaintiff to be quiet, and told her that she had no opportunity to speak and directed her to leave the office. (Id.at ¶150, *see also*, Schwetz Dep. 133:17-19). Dr. France witnessed this and admitted that Dr. Dillion was too harsh. at ¶150. However, Dr. France directed Plaintiff to keep her mouth shut and keep her head down. Id

### B.  Complaint of Retaliation and Further Retaliation

On May 13 or 14, 2019, Plaintiff complained of Dr. Dillion's treatment to Stoddard and told Ms. Stoddard that Dr. Dillion called her "lower than the whale shit" because of her gender and claims of discrimination. (Schwetz Dep. 139:6-140:13, 141:18 –142:2, 142:12- 17). Plaintiff

also told Stoddard that she told Dr. Dillion that his decision of rescinding Stutz's offer was discriminatory. (Schwetz Dep. 142:3-11). In response, Stoddard told Plaintiff that Dr. Dillion was angry with her and did not like Plaintiff because of Stutz's event. She also told Plaintiff to do her job and not to worry too much about it. (Schwetz Dep.139:6 - 140:13).

Following Plaintiff's complaint of discrimination and retaliation, Plaintiff was not welcome in Dr. Dillion's office, even though Plaintiff was a member of his cabinet. While in the mornings the male Directors would regularly be invited to Dr. Dillion's office for conversation, Plaintiff was not. (Schwetz Dep. 116:10- 23). Plaintiff was excluded from meetings involving tasks that she was responsible for. (Pl's ¶¶171-76; Schwetz Dep. 116:24-117:12).

Dr. Dillion embarrassed Plaintiff in front of other members of his cabinet. In July 2019, during a leadership retreat in Saratoga, New York, Dr. Dillion directed Plaintiff to stand up and go to a different table, and one of Plaintiff's colleagues sat down next to him instead. ((Pl's ¶174, Schwetz Dep. 110: 7-113:18). In the Weight Watchers meeting, Dr. Dillion shooed Plaintiff away and talked to a male athletic director. (Pl's ¶163; *see also*, Schwetz Dep. 126:10-16).

More than once, Plaintiff complained of such discriminatory and retaliatory treatment to Dr. France. (Schwetz Dep. 124:16-19). In response, Dr. France told Plaintiff "[g]et used to it, honey. You are a woman. It is a boy's club." (Schwetz Dep. 124:18-125:4). She also told Dr. France that she was treated differently by Dr. Dillion after she complained of Dr. Dillion's discrimination and that she was worried about her job. Pl's ¶159. In response, Dr. France told Plaintiff "Don't be paranoid. We all know that this is how the boys club works." Id. at ¶160.

In a leadership retreat in July 2019, Plaintiff also complained of the retaliatory and discriminatory treatment from Dr. Dillion, stating that "I am concerned that you're having, you know, open communication with my colleagues but you seem to not have that with me. Is there a

way that we could move forward, where I could have more open communication with you?" Pl's ¶161. In response, Dr. Dillion told her, "[w]e will see" and threatened her job safety again and emphasized that he would revisit her job qualifications in January 2020. Id. at ¶162.

Plaintiff complained both to Dr. France and Ms. Stoddard. Both Dr. France, Plaintiff's direct supervisor and Ms. Stoddard, being a function of ED of HR prior to the hiring of Dr. Valerie D'Agunna, asked her to focus on her job, work harder and stay away from Dr. Dillion because Dr. Dillion was angry with Plaintiff because of her complaint. Id. at ¶¶122, 158, 164-66, 177 -179. Neither of them had a follow-up meeting with Plaintiff or told Plaintiff whether there was an investigation as to her complaint. Id. at ¶165.

### C. End of Year Evaluation for School Year 2018-2019

Plaintiff was retaliated against by receiving a retaliatory and unfair performance evaluation. Her rating was 2.8 out of 5. (DEF 223, Exhibit 12).This was substantially lower than her rating from the previous year, which was 4.9 out 5. (DEF 209, Exhibit 11) Thus, Plaintiff questioned the rating and alleged that she believed she was being underrated and that the review was retaliatory. Pl's ¶181 In response, Dr. France said she was a "harsh evaluator." Id. at ¶182.

### D. Further Complaint, and Continued Retaliation

Plaintiff also filed further complaints because Dr. Dillion kept retaliating against Plaintiff. In September 2019, Plaintiff made a complaint regarding Dr. Dillion's retaliation toward her. Dr. France ignored it and told her to get a thicker skin. Furthermore, Dr. Carla Theodora also made an informal complaint on behalf of the Plaintiff. Id. at ¶177. In or around October 2019, Plaintiff made a complaint and expressed to Dr. France that Dr. Dillion treated other male directors more favorably than her. In response, Dr. France told Plaintiff she was sensitive. Id. at ¶178.

### E. Continued Discrimination and Retaliation: Being Excluded from Meetings

Plaintiff was excluded from meetings from time to time since she complained to Dr. Dillion that his decision to rescind Ms. Stutz's offer was discriminatory. Specifically, for around six

months, Plaintiff and Dr. Dillion, together with other directors had been working on moving five different programs across different buildings, and there were a lot of planning conversations that took place. Id. at ¶¶171-175. Plaintiff witnessed and was told by other male directors that they had meetings with Dr. Dillion without Plaintiff, even though Plaintiff was part of the executive team tasked with moving the programs. Id. at¶ 176

Plaintiff was also excluded from other work-related, regular meetings once a week, after she complained of Dr. Dillion's discriminatory practice. The purpose of having meetings with Dr. Dillion was to address operational scenarios, when there would be specific situations or programmatic move situations. Plaintiff needed to get Dr. Dillion's approval for particular operational events. (Schwetz Dep. 120:22-121:19). Such adverse exclusion occurred from May 2019 through her termination. (Schwetz Dep. 122:3-24). Plaintiff was even questioned by other directors as to why she was not present at planning meetings that were related to Plaintiff's department. (Schwetz Dep. 123:3-124:10)

### F. Continued Retaliation: Reassignment and Termination

On January 22, 2020, Plaintiff received a counseling memo and required to improve work performance. Pl's ¶ 250. Within 10 days, on January 31, 2020, Defendant notified Plaintiff that she would be reassigned and terminated because of:  the hiring of Supervisor I position, lack of moral compass and APPR data. (Schwetz Decl. ¶85) On January 31, 2020, Dr. Dillion sent Plaintiff's written notice of reassignment without any given reasons. Pl's ¶251.

On March 18, 2020, Dr. Dillion sent Plaintiff the termination notices without giving any reasons, which directly violated Education Law §3031. Pl's ¶252. On March 19, 2020, Plaintiff protested such violation and requested that Dr. Dillion give her the reasons for her termination. Dr. Dillion gave her a couple pre-textual reasons. Id. at ¶253.

### G. Pre-textual Reasons: Being Reviewed Under Magnifier & Termination

### 1.   Statement in Defendant's Counseling Memos

Defendant issued counseling memo that they had a meeting to discuss Plaintiff's performance deficiencies. This is untrue because Dr. Dillion, and Dr. France did not have a meeting as to her performance issues in January 2019.  (Schwetz Dep. 133:20 – 24). The first time that Dr. Dillion threatened her job's safety was on May 10, 2019, following Plaintiff's complaint of Dr. Dillion's discrimination to Dr. Dillion. Plaintiff was issued a couple counselling memos in January and February 2020. Dr. France decided that different individuals should send different counselling memos to Plaintiff. (Dr. D'Aguanno Dep. 112:4-22). Plaintiff complained of Dr. Dillion's discrimination and retaliation to Dr. France on several occasions, in July 2019, September 2019, October 2019, and December 2019.  Pl's ¶¶ 159-60, 177-79

### 2.   Given Reasons for Termination and Reassignment Were Pre-textual

In response to Plaintiff's request for a reason, Dr. Dillion gave Plaintiff the following conclusory and general reasons:  (1) "[c]oncerns about a lack of judgment in the hiring of personnel, (2) "[f]ailure to follow directives and protocol regarding the hiring of personnel;" (3) "[p]resentment of inaccurate data and information to supervisors;" (4) "[b]ut for intervention of supervisors, your Department would have provided the District Superintendent with inaccurate data/information to certify and present to the State;" (5) "[n]ot meeting expectations relative to programmatic planning for students and staff in your Department, and in particular, involving move to Willet"; and (6) "[n]ot demonstrating future growth potential due to the failure to address deficiencies. (**DEF 486**, **Exhibit 15**)

#### 2.1 *The First Two Given Reasons Resulted from hiring Supervisor I Hiring*

Ms. Stutz was interviewed by the Hiring Committee, including Plaintiff, Longo, and Kroog. Pl's ¶130. They concluded that Ms. Stutz was the best candidate based on the interview results. Id. Plaintiff followed the hiring protocols and forwarded her for the superintendent's level interview. Id. at ¶131. HR offered Ms. Stutz the position. Plaintiff did not initiate the process of

7

the letter of intent to hire. Id. Plaintiff was told that Dr. Dillion would like to rescind Ms. Stutz's

offer because of her SAD certificate rather than lacking HR experience. Id. at ¶¶ 132-34.

She was retaliated against immediately and Dr. Dillion directed her not to challenge him

and to leave his office. Id. at ¶140. Within two weeks, Dr. Dillon called her "lower than whale shit

before her supervisor, stating, "You are lower than the whale shit to me." Id. at ¶¶145-47. Later

on, Defendant admitted that Stutz's SDA met requirements and alleged that Stutz lacked

experience. Id. at¶¶19,21,23-24. This was not what Plaintiff was initially told when she

complained to Dr. Dillion that his decision to rescind the offer was discriminatory. Id. at ¶¶ 132-

34.

Dr. Dillion reprimanded Plaintiff because of her lack of understanding or judgment and

based on her advancement of Ms. Stutz. (Dr. Dillion Dep. 58:11-59:24). He did not know that Ms.

Stutz was interviewed by a Hiring Committee and he did not bother to inquire. (Dr. Dillion 58:11-

59:24). Dr. Dillion testified that Plaintiff failed to follow the hiring protocols because Plaintiff

offered Ms. Stutz the position without his approval. The given reason was because the step of

being approved by Dr. Dillion's office was skipped. (Dr. Dillion Dep. 56:4-18).

### 2.2 *The Third Given Pre-textual Reason*
As for the third given reason, Dr. Dillion testified that Plaintiff was responsible for

and punished for the submission of the error data, because the teachers whose scores were in

dispute were in the SE and the SE was under Plaintiff's watch. (Dr. Dillion Dep.  118:10-23).

### 2.3 The Fourth and Fifth Given and Pretextual Reasons
The fourth given reason is related to APPR data submission, Dr. Dillion was not directly

involved in the submission of inaccurate data. (Dr. Dillion Dep.118:20-119:8). Dr. Dillion was

not aware that Mr. Nicolino proposed to resubmit the error data and Plaintiff objected to such a

suggestion. (Dr. Dillion Dep.  117:4-17). Mr. Nicolino was not disciplined or investigated for

this. (Dr. Dillion Dep. 117:25-118:4). Dr. Dillion insisted that Plaintiff should be liable because the teachers were from the SE Department and Plaintiff was the ED and because Plaintiff submitted the data. (Dr. Dillion Dep. 118:10-19). Dr. France, as the APP committee chairperson, was lead of the APPR committee. And there were also several members of the department that were part of that APPR committee. (Schwetz Dep. 58:14 – 59:14). Plaintiff was not involved in the investigation or the decision to terminate the therapist or rescind the termination. (Dr. A'Guanno Dep. 86:23-87:15). HR recommended terminating the therapist and Dr. Dillion supported it. (Dr. Dillion Dep. 122:19-22. 123:7-12).

As to the fifth reason, Plaintiff was excluded from meetings by Dr. Dillion as retaliation, and the use of the modulars for therapy was approved by Dr. Dillion. Pl's ¶¶ 237-238, 243-244.

### III.    Failure to Follow BOCES' Policy to Investigate Plaintiff's Complaints

As to a complaint, Defendant's policy is that all complaints should be investigated. Id. at ¶262-63. If a complaint relates to Dr. Dillion's employment practice, Dr. Dillion should recuse himself from that and he should send that to outside counsel. Id. at¶¶261, 264 -65, 271.

Plaintiff filed a complaint with respect to Dr. Dillion's discrimination on May 1, 2019. Id. at¶140. With such knowledge, Dr. France witnessed Dr. Dillion call Plaintiff "lower than whale shit" and did nothing. On May 13 or 14, 2019, Plaintiff complained to Stoddard. Id. at¶¶154-57. In July 2019, Plaintiff complained to Dr. Dillion as to his retaliation. Id. at¶¶161-62, 174. In July, September, October, and December 2019, Plaintiff complained as to Dr. Dillion's discrimination and retaliation, Dr. France told her to get used to it and not be sensitive. Id. at¶¶159-60, 177-79.

There are testimony disputes among Defendant's deponents as to whether there was an investigation as to Plaintiff's complaint. Id. at¶ 277. If there was, Dr. Dillion was never interviewed as part of the investigation. Id. at¶ 278.  Plaintiff never received a written or verbal report as to the outcome of her discrimination complaint, and no follow-up meeting was held. Id. at¶ 280.

## LEGAL STANDARD THE HARSH REMEDY OF SUMMARY JUDGMENT

The Second Circuit has ruled that granting a motion for summary judgment is a drastic remedy, which must be used "sparingly." Gallo v. Prudential Residential Serv, 22 F.3d 1219 (2d Cir. 1994). Defendant bears the burden to establish the absence of any material factual issues. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

"In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and ... resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also*, McCarthy v. Dun & Bradstreet Corp., 484 F.3d 184 (2d Cir. 2007). The Courts only consider arguments that the moving party has made in its initial brief. Mexico Infrastructure Fin., LLC v. Corp. of Hamilton, No. 17-CV-6424 (VSB), 2020 WL 5646107, at *3 (S.D.N.Y. Sept. 21, 2020) (collecting cases). The Court may consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

"It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Sylla v. New York City Dep't of Educ., No. 18-cv-6524(RPK)(MMH), 2023 WL 2667072, at *5 (E.D.N.Y. Mar. 28, 2023) (citing, McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006)). Thus, in reviewing such a motion, "the judge must ask… not whether… the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Jeffreys v. City of New York, 426 F.3d 549 (2d Cir. 2005). A court's goal is "to isolate and dispose of factually unsupported claims" Geneva Pharm. Tech. Corp. v. Barr Labs. Inc., 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks omitted) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986)).

The Second Circuit has cautioned that "[w]here an employer acted with discriminatory intent, direct evidence of that intent will only rarely be available, so affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Taddeo v. L.M. Berry & Co., 526 Fed. Appx. 121, 122 (2d Cir. 2013). Thus, the Second Circuit has repeatedly cautioned against granting summary judgment in employment discrimination cases because the employer's intent is often at issue and is difficult to determine. Schwapp v. Town of Avon, 118 F.3d 106,110 (2d Cir. 1997). Indeed, "in the context of employment discrimination cases, summary judgment is 'ordinarily inappropriate' because the allegations therein require exploration into an employer's motivation and intent for an employment decision." Pealo v. AAF McQuay, Inc., 140 F.Supp.2d 233, 236 (N.D.N.Y. 2001) (quoting Griffin v. Ambika Corp., 103 F.Supp.2d 297, 306 (S.D.N.Y. 2000)); Brierly v. Deer Park Union Free School Dist., 359 F.Supp.2d 275, 289 (E.D.N.Y. 2005). Here, there are ample disputes of material fact that must be resolved only by a fact finder at trial. Thus, Defendant's motion should be denied.

## ARGUMENT

I. **Plaintiff's Claims Under Title VII Meet the Procedural Requirement**

A. **Plaintiff Timely Filed Her EEOC Charge**

"[I]f the plaintiff alleges a continuing violation, such as a hostile work environment, the plaintiff need only show that part of the violation took place within the limitations period; once that is shown, a court may consider 'the entire time period' of the violation in determining liability." Anyanwu v. City of New York, 2013 WL 5193990, at *9 (S.D.N.Y. Sept. 16, 2013)

Here, Plaintiff was subjected to continued retaliation in violation of Title VII after she expressed her concerns to Dr. Dillion's discriminatory practice of rescinding Ms. Stutz's offer. Pl's at ¶140.The retaliation against Plaintiff did not end until early June 2020. (Schwetz Decl.¶96,97) Following Plaintiff's complaints of discrimination and retaliation, Dr. Dillion had

regularly excluded her from important work meetings from May 2019 to her termination date of June 30, 2020. (Pl's at ¶¶ 170-76; Schwetz Dep. 121:20-124:10). Further, upon her termination, Dr. Dillion and BOCES refused to issue a reference letter to Plaintiff. This had a catastrophic effect on her career. Indeed, Plaintiff interviewed with 30 school districts to no avail. *See*. *e.g.*, <u>Berrie v. Bd. Of Educ. of Port Chester-Rye Union Free Sch. Dist.</u>, No. 14-CV-6416 (CS), 2017 WL 2374363, at *10 (S.D.N.Y. May 31, 2017) *see also*, <u>Pantchenko v. C. B. Dolge Co</u>., 581 F.2d 1052, 1055 (2d Cir. 1978) (holding that an employer's refusal to give employee a letter of recommendation is sufficient to state a cause of action for retaliation); <u>Jute v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 178-79 (2d Cir. 2005); and <u>Silver v. Mohasco Corp.</u>, 602 F.2d 1083, 1090 (2d Cir. 1979).

### B. Defendant Waives Its Defense

Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts. <u>Fort Bend Cnty., Texas v. Davis</u>, 204 L. Ed. 2d 116, 139 S. Ct. 1843, 1851 (2019). Instead, it is merely a precondition of suit, and thus subject to waiver, estoppel, equitable tolling, and equitable defense. <u>Fowlkes v. Ironworkers Loc. 40</u>, 790 F.3d 378, 385 (2d Cir. 2015).

Like the defendant in <u>Fort Bend Cnty</u>, Defendant waited too long to properly raise their defense because Defendant should have filed a motion to dismiss rather than an answer, and Defendant's answer did not directly allege that Plaintiff failed to timely file an EEOC charge. <u>Fort Bend Cnty., Texas</u>, 139 S. Ct. at1851–52. ("Defendants, after all, have good reason promptly to raise an objection that may rid them of the lawsuit filed against them. A Title VII complainant would be foolhardy consciously…to take the risk that the employer would forgo a potentially dispositive defense."). Thus, Defendant waived their defense by failing to properly raise it.

Defendant could have filed a motion to dismiss at any time from June 15, 2021 (ECF No.1) to November 23, 2022(ECF No.27).

## II.    Plaintiff's Claims Under the NYSHRL Meet the Notice of Claim Requirement Per N.Y. Educ. Law § 3813

Plaintiff's filing with the EEOC and service on Defendant's attorney meets the requirement of notice of claim per N.Y. Educ. Law § 3813. A claim accrues for purposes of § 3813 when it matures and damages become ascertainable. *See*, Pope v. Hempstead Union Free Sch. Dist., 194 A.D.2d 654, 655 (2d Dept. 1993) (citing Board of Educ. v. Wagner Constr. Corp., 37 N.Y.2d 283, 290 (1975)). On March 20, 2020, Governor Cuomo signed Executive Order No. 202.8 tolling most time limits under New York law in light of the COVID-19 pandemic (the "Tolling Order"). The tolling period was subsequently extended in a series of executive orders through November 3, 2020. Brash v. Richards, 195 A.D.3d 582, 584, 149 N.Y.S.3d 560, 562 (2021). The tolling applied to any such time limits "prescribed by any procedural laws" of New York, expressly including the civil practice law and rules (CPLR)…or "any other statute, local law, ordinance, order, rule, or regulation." Id.

Compliance with Education Law § 3813 is all that is required when the school district has been "sufficiently informed" of the claim. Parochial Bus Sys., Inc. v. Bd. of Educ. of City of New York, 60 N.Y.2d 539, 547, 458 N.E.2d 1241 (1983). The essential elements necessary in the notice are the nature of the claim, the time when, the place where, and the manner in which the claim arose. *See*, Id; *see also*, Matter of Saranac Lake Cent. Sch. Dist. v. New York State Div. of Human Rights, 226 A.D.2d 794, 795 (3d Dept. 1996).

Courts have permitted other forms of documents, not denominated as a notice of claim, to satisfy the notice requirement "if it provides the necessary information as to the nature of the claim." *See*, Mennella v. Uniondale Union Free Sch. Dist.,287 A.D.2d 636(2d Dept. 2001)

(petition to Commissioner of Education constituted notice of claim); *see also*, <u>Kushner v. Valenti</u>, 285 F.Supp.2d 314 (E.D.N.Y. 2003) (EEOC complaint could be served as notice of claim to meet the requirement of Education Law § 3813).

Here, Plaintiff's former counsel served Defendant with the Complaint of Reprisal, dated March 11, 2020, and such claim met the requirements of Education Law § 3813 because it listed Plaintiff's potential claims and the relevant issues. In addition, Plaintiff served a detailed description as to what occurred, where she expressed to Defendant that she was retaliated against and that she complained to HR that Dr. Dillion had referred to her as "lower than the whale shit," and that HR failed to investigate this complaint.

More importantly, Plaintiff also met the requirement of notice of claim by serving Defendant with a right to sue on Mar 19, 2021. The 228 days from Mar.20, 2020 to Nov. 3, 2020 should be excluded from the accounting of 90 days because it was tolled (by Tolling Order) rather than suspended, and thus the deadline for Plaintiff to file a notice to claim was April 14, 2021, since the continuing violation ended in June 2020. <u>Brash</u>, 195 A.D.3d at 583 ("A toll suspends the running of the applicable period of limitation for a finite time period, and "the period of the toll is excluded from the calculation of the relevant time period") (internal citations omitted). Thus, Plaintiff meet the requirements of filing a notice of claim. <u>Kushner</u>, 285 F.Supp.2d 314.

Therefore, the Complaint of Reprisal, together with Plaintiff's Petition against Defendant (DEF 1347-350) adequately apprised Defendant of the essential elements of Plaintiff's claim. *See*, <u>Bucalo v. E. Hampton Union Free Sch. Dist.</u>, 351 F. Supp. 2d 33, 37 (E.D.N.Y. 2005).

## III.    Discrimination

As set forth below, Defendant has failed to carry its burden for summary judgment under these standards with respect to any of Plaintiff's claim. In discrimination cases, a three-part burden shifting process applies, with Plaintiff bearing the initial burden to establish its prima facie

case which is unchallenged herein and shall not be opined on. *See*, McDonnell Douglas Corp. v Green, 411 US 792, 794, 93 S Ct 1817, 1820, (1973). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Finally, if the defendant satisfies this burden, the plaintiff must then demonstrate that the proffered reason is merely a pretext for unlawful discrimination. McDonnell Id. As set forth below, application of this analysis to the recorded evidence demonstrates that Defendants' motion for summary judgment fails.

### A. Plaintiff Has Established a *prima facie* case of Discrimination

To establish a prima facie case of discrimination, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) the adverse employment action(s) occurred under circumstances giving rise to an inference of discrimination. Weinstock v. Colombia Univ., 224 F.3d 33, 42 (2d Cir. 2000). Here, Plaintiff, as woman is part of a protected class. Further, she was hired by Defendant and promoted by Defendant at least five times, and thus deemed qualified for the position for ED, additionally, Plaintiff was qualified. (Dr. Dillion Dep. 50:9-11).

### 1. Plaintiff Suffered Numerous Adverse Employment Actions

Adverse action refers to "a materially adverse change in the terms and conditions of employment such as termination, demotion evidenced by a decrease in salary or wage, being given a less distinguished title, a material loss in benefits, significantly diminished material responsibilities, or some other action deleterious to the plaintiff's current or future employment." Davis-Garett v. Urb. Outfitters, Inc., 921 F.3d 30, 43 (2d Cir. 2019) (internal quotation marks, citation, and emphasis omitted). The Supreme Court has noted, "[t]he phrase terms, conditions, or privileges of employment evinces a congressional intent to strike at the entire spectrum of disparate treatment… in employment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986).

Significantly, "there is no exhaustive list of what constitutes an adverse employment action." *Grana v. Potter*, No. 06-CV-1173 (JFB)(ARL), 2009 U.S. Dist. LEXIS 13159, at *43 (E.D.N.Y. Feb. 19, 2009). "Because there are no bright-line rules, courts must pour over each case to determine whether the challenged employment action reaches the level of adverse." Richardson v. New York State Dept. of Corr. Servs., 180 F.3d. 426, 446 (2d. Cir. 1999).

Here, Plaintiff was subjected to discrimination based on her gender because, among other things, she was excluded from meetings relating to her job position and duties. Pl's Id. at ¶¶ 175-76. She only heard about these meetings from male directors who were also involved in the same projects as Plaintiff. Id. Further, Plaintiff and another female director were subjected to a higher standard with regard to the hiring of administrators than their male counterparts Id. at ¶ 125. Defendant could not justify the higher standard. Id.

What's worse, Plaintiff was embarrassed before her direct supervisor by being called "lower than the whale shit" and was humiliated before two male colleagues by directing to leave her table when say good morning to Dr. Dillion. Id. at ¶¶ 140, 174.

### 2. The Numerous Adverse Employment Actions Plaintiff Suffered Occurred Under the Circumstances Giving Rise to an Inference of Discrimination

Indeed "[t]he Second Circuit has cautioned that where an employer acted with discriminatory intent, direct evidence of that intent will only rarely be available" Taddeo, 526 Fed Appx at122 The Holcomb court continued stating a "plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors". 521 F.3d. at 138. Therefore, most plaintiffs must rely on circumstantial evidence. *See,* Graham v. Long Island R.R., 230 F.3d. 34, 38 (2d. Cir. 2000).

Here, A full review of the record indicates that Plaintiff's termination occurred under

circumstances giving rise to an inference of discrimination. Dr. Dillion the decision maker to terminate Plaintiff did not challenge Kroog's SDA when hiring him as the Supervisor I of ED. Pl's ¶¶139.Dr. Dillion poke fun and joke about Dr. Lydia Begley (female), had to keep him safe because of his banter comments. Id. at ¶¶ 137-38. Furthermore, male directors have easier conversations with Dr. Dillion that the female ones.

### B. Defendant's Alleged Reason Reasons for Terminating Plaintiff is Pretextual

"Establishment of a *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee. Sanderson v. Leg Apparel LLC, No. 1:19-CV-8423-GHW, 2023 WL 2753200, at *9 (S.D.N.Y. Mar. 31, 2023) (internal citations omitted). "[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision," but on that the protected class "was at least one of the motivating factors." *Id*. The burden to establish pretext "is not particularly stringent." Holmes v. Brentwood Union, No. CV-03-1084 (TCP)(AKT), 2006 U.S. Dist. LEXIS 41081, at *14 (E.D.N.Y. May 25, 2006). A plaintiff can establish pretext when she can "draw into question" the credibility of the defendant's reason. Collins v. Cohen Potani, No. 04 CV 8983(KMW)(MHD), 2008 U.S. Dist. LEXIS 58047, at *65 (S.D.N.Y. July 30, 2008).

Here, Mr. Nicolino suggested to submit the wrong data was not disciplined or terminated. Pl's ¶¶217-220. Dr. Dillion favors male directors than female ones and subjected female directors, including Plaintiff a higher standard than male one in the process of hiring administrators. Id. at ¶125. Defendant failed to investigate the matter as to APPR and hiring Supervisor I before terminating Plaintiff. Id. at ¶¶ 257-60. Richardson-Holness v. Alexander, 196 F. Supp. 3d 364, 371 (E.D.N.Y. 2016) ("[E]mployment decisions that are made collectively can be tainted by the bias of a single biased individual so long as the biased party played a 'meaningful role' in the decision-making process.").

17

## IV.    Hostile Working Environment

"To establish a hostile work environment, plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she experienced unwelcome harassment; (3) the harassment was based on her membership in the protected class; and (4) the harassment was severe or pervasive enough to create a hostile work environment." Ewing v Coca Cola Bottling Co. of N.Y., Inc., No. 00-CV-7020 (CM), 2001 WL 767070, at *7 (S.D.N.Y. June 25, 2001)(internal citations omitted) Further, the issue of harassment in a hostile work environment is a "mixed question of law and fact," it is "especially well-suited for jury determination." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 605 (2d Cir. 2006) (quoting Richardson, 180 F.3d at 439).

Moreover, "Despite offering a reasonable avenue of complaint to plaintiff, employer defendants can still be held liable if plaintiff can show that they 'knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.' Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000)

Indeed, "The question of whether an employer has provided a "reasonable avenue of complaint" is a question for the jury, see, Lopez v. S.B. Thomas, Inc.,831 F.2d 1184, 1189 (2d Cir.1987) (whether employer has taken reasonable steps to remedy discrimination is question of fact), whose inquiry is informed by the evidence as a whole, including evidence of the motivations and actions of the employer between the time the grievance procedure is concluded and the time the employee is discharged. In the instant case, there is sufficient evidence from which a jury could conclude that the defendant's procedures did not 'provide a reasonable avenue of complaint.' There is also evidence, including the post-grievance actions of the employer, from which the jury could reasonably conclude that the 'employer ... knew of the harassment but did nothing about it,' Karibian v. Columbia University,14 F.3d 773, 780 (2d Cir. 1994). In light of this evidence the jury

could reasonably have found that the plaintiff had met her burden to show a prima facie case of retaliatory discharge." <u>Reed v. A.W. Lawrence & Co., Inc</u>., 95 F.3d 1170, 1181 (2d Cir. 1996).

Here, Plaintiff has demonstrated that she was subject to a hostile work environment, experienced both severe and pervasive harassment based on her membership in a protected class, has satisfied each prong of <u>Ewing</u>, *see*, Pl's ¶¶ 141, 145-47, 149, 151, 162, 171-76; and that Defendant, while arguably providing Plaintiff a "reasonable avenue of complaint," did not take "appropriate remedial action." <u>Id</u>. at ¶¶ 278-79.

## V.    Retaliation

Retaliation claims under Title VII and NYSHRL proceed under the three-step *McDonnell Douglas* burden-shifting framework and should be analyzed pursuant to the principles applicable to retaliation claims under Title VII. <u>Salamon v. Our Lady of Victory Hosp</u>., 514 F.3d 217, 226 n.9 (2d Cir. 2008). Under <u>McDonnell Douglas</u>, a plaintiff must first establish a *prima facie* case of retaliation by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." <u>Jute v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 173 (2d Cir. 2005). If Plaintiff establishes a prima facie case, the "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." <u>Zann Kwan v. Andalex Grp., LLC</u>, 737 F.3d 834, 845 (2d Cir. 2013). If Defendant can do so, Plaintiff has to show that defendant's proffered reasons are pretextual. <u>Schaper v. Bronx Lebanon Hosp. Ctr.</u>, 408 F. Supp. 3d 379, 390 (S.D.N.Y. 2019)

### A.    Plaintiff Engaged in Protected Activity and Defendant Had Knowledge

A protected activity consists of an "action taken to protest or oppose statutorily prohibited discrimination." <u>Cruz v. Coach Stores, Inc</u>. 202 F.3d 560, 566 (2d Cir. 2000). "[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to

receive statutory protection," and that "making complaints to management" constitutes a protected activity." Id. An employee's complaint qualifies as a protected activity "so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013); *see also,* Sanderson v. Leg Apparel LLC, No. 1:19-CV-8423-GHW, 2023 WL 2753200, at *17 (S.D.N.Y. Mar. 31, 2023)

Here, the record is replete with protected activity. Plaintiff's May 1, 2019 complaint of Dr. Dillion's discrimination against Ms. Stutz was protected activities. She was told Dr. Dillion would like to rescind the offer because Ms. Stutz has SDA. Mr. Kroog, former Supervisor I has the same credentialling of SDA. She also witnessed Dr. Dillion's other discriminatory action against female directors or administrators. Thus, these complaints constitute a protected activity.. *See,* Bennett v. Hofstra Univ., 842 F.Supp.2d 489, 500 (E.D.N.Y. 2021) (Title VII does not required a formal complaint); Martin v. Sate Univ of N.Y., 704 F. Supp.2d 202, 227 (E.D.N.Y. 2010); Russell v. County of Nassau, 696 F. Supp. 2d 213, 237 (E.D.N.Y. 2010) ("Indeed, Title VII's protection against retaliation extends to an employee who speaks out about discrimination not on her own initiative, but in answering questions during an employer's internal investigation if for no other reason than . . . [w]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity.") (alterations in original).

Plaintiff's following complaint of discrimination and retaliation are also protected activities, including filing a complaint of Dr. Dillion's retaliation to Ms. Stoddard in May 2019, to Dr. France in May, Jul., Sep., Oct., and Dec.2019. Lloyd v. Children's Hosp. of Philadelphia, No. 2:19-CV-02775-JDW, 2023 WL 2940229, at *4 (E.D. Pa. Apr. 13, 2023); *see also*, Sumner, 899

F.2d at 209 (determining "informal protests of discriminatory employment practices, including making complaints to management" constitute protected activity). <u>Schaper</u>, 408 F. Supp. 3d at 391 ("[F]or the purposes of establishing a retaliation claim, the Second Circuit recognizes both formal and informal complaints as protected activity"). Plaintiff also demonstrates the second element are satisfied. <u>Papelino v. Albany Coll. of Pharmacy of Union Univ.</u>, 633 F.3d 81, 92 (2d Cir. 2011).

**B. Plaintiff was Subjected to an Adverse Action: Retaliatory Hostile Working Environment, Termination, and Being Blacklisted**

To prevail on a retaliation claim, the question is whether the employer's actions "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination,'" rather than whether "the challenged actions were related to the terms or conditions of employment." <u>Tepperwein v. Entergy Nuclear Operations, Inc.</u>, 663 F.3d 556, 572 (2d Cir. 2011).

Thus, following Plaintiff's protected activities, Plaintiff was subjected to hostile treatment from the District Superintendent of Defendant, an individual who has the authority to terminate employees. Plaintiff was harassed before her supervisor by being called "lower than whale shit," excluded from important meetings of work, threatened her job, humiliated before two co-workers, then reassigned and terminated. Pl's ¶¶ 141, 145-47, 149, 151, 162, 171-76. In APPR issue, Hiring Supervisor I issue, and Medicaid issue, where different people were involved, and Plaintiff was disciplined and terminated regardless to what extent she was involved in such event. <u>Id</u>. at ¶¶ 254-60. After the termination, Plaintiff was blacklisted and Mr. Widmer whom Plaintiff has closely worked with was prohibited from providing reference of letter for Plaintiff, a more than 20-years employee of Defendant (Schwetz Decl. ¶96). Plaintiff then was terminated. Pl's ¶¶ 250-51. *See*, <u>Desir v. Board of Coop. Educ. Servs. (BOCES) Nassau Cty.</u>, 803 F. Supp. 2d 168, 180 (E.D.N.Y. 2011) (internal quotation marks omitted), *aff'd*, 469 Fed.Appx. 66 (2d Cir. 2012); *see also* <u>Ruiz v. County of Rockland</u>, 609 F.3d 486, 493–94 (2d Cir. 2010).

### C. Causation

"The plaintiff's burden in this regard is '*de minimis*,' and 'the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive.'" Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (quoting Jute v. Hamilton Sundstrand Corp., 420 F.3d 166 at 173). Courts have consistently held that one way to establish a claim of retaliation is to show that the complaining employee is treated differently than other employees who did not engage in a protected activity. DeLuca v. Allied Domecq Quick Serv. Restaurants, No. 03-CV-5142(JFB)(AKT), 2006 WL 1662611, at *12 (E.D.N.Y. June 13, 2006). A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibility, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." Zann Kwan, 737 F.3d at 847.

"We have regularly held that [t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.' Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir.2001) (internal quotation marks omitted). Furthermore, no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship" Summa 708 F.3d, at 127, 128.

Here, Defendant terminated Plaintiff in the midst of her ongoing complaints of discrimination and retaliation. Plaintiff filed a complaint on May 1, 2019, and thusly was called "lower than whale shit." Pl's at ¶¶ 140-41. She was excluded from meetings of work, threatened with her job security, id. at ¶¶ 151,162; and she filed complaints of retaliation and discrimination in May 2019, Jul 2019, Sept. 2019, Oct. 2019 and Dec.2019. Id. at ¶¶ 173-79, 154-58, 159-60.

On January 22, 2020, she received a counseling memo and required to improve her work performance, and then on January 31, 2020, she was terminated. Plaintiff made a complaint to Dr.

France in May, September, and December 2020, and she was the one to decide that different individuals should sent counselling memos to Plaintiff. Id. at ¶¶ 250-52, 177-79. *See*, Zann Kwan, 737 F.3d at 845 (finding that a three-week period from a protected activity to termination was, standing alone, sufficient to satisfy the fourth element of a plaintiff's *prima facie* retaliation claim); *see also*, Raniola v. Bratton, 243 F.3d 610, 624 (2d Cir. 2001)([P]laintiff's burden with respect to causation is "a light one, usually demanding only that the protected activity preceded the adverse action") and Espinal v. Goord, 558 F.3d. 119, 129 (2d Cir. 2009) (six-month temporal gap between protected activity and adverse action sufficient for finding causal connection).

Furthermore, Dr. Dillion reprimanded Plaintiff and alleged her lacks understanding or judgment and based on her advancement of Ms. Stutz. (Dr. Dillion Dep. 58:11-59:24). He did not know that Ms. Stutz was interviewed by a Hiring Committee and he did not bother to inquire. (Dr. Dillion 58:11-59:24). Pl's ¶¶254-60.

### D. Defendant's Proffered Reason is Pretextual

Even assuming, arguendo, that Defendant terminated Plaintiff in part for a non-discriminatory reason, a plaintiff may prove that that basis is pretextual by relying solely upon the same evidence that established its prima facie case. Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995). "[A] plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." Kwan v. Andalex Grp., LLC, 737 F.3d 834, 847 (2d Cir. 2013). Goldschmidt v. New York State Affordable Hous. Corp., 380 F.Supp.2d 303, 318-19 (S.D.N.Y.2005) ("All too often ... employers react negatively to the assertion of a claim and consequently turn a weak discrimination case into a strong retaliation case.") "Thus, unless the employer has come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject, the conflict between the

plaintiff's evidence establishing a prima facie case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial. *See generally,* Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 38 (2d Cir. 1994); see also, Holmes v. Brentwood Union, 2006 U.S. Dist. LEXIS 41081, at *14 (E.D.N.Y. May 25, 2006).

Here, Defendant terminated Plaintiff as the result of her well-documented history of complaints of discrimination and retaliation. Plaintiff has been repeatedly told to be quiet and Dr. Dillion was mad at her because of her complaint. Defendant's given reasons are unfounded facts or missed substantial knowledge of relevant details. Plaintiff was responsible for and punished for the submission of the error data, because the teachers whose scores were in dispute were in the SE Department and the SE Department was under Plaintiff's watch. (Dr. Dillion Dep. 118:10-23).

At beginning Defendant did not give reasons for termination, a violation of Education Law §3031, Defendant gave reasons after being noticed of such violation by Plaintiff. Pl's ¶¶250-53. The fourth given reason is related to APPR data submission, Dr. Dillion was not directly involved in the submission of inaccurate data. (Dr. Dillion Dep.118:20-119:8). Pl's ¶¶3253-60. Dr. Dillion was not aware that Mr. Nicolino proposed to resubmit the error data and Plaintiff objected to such a suggestion. (Dr. Dillion Dep. 117:4-17). *See,* Mauze v. CBS Corp., No. 15-CV-4905(RJD) (SLT), 2018 WL 5115564, at *14 (E.D.N.Y. Oct. 19, 2018) (exaggeration of seriousness of performance issues demonstrates pretext); *see also,* Hicks v. Baines, 593 F.3d 159, 164–65 (2d Cir. 2010) (quoting Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir.1990))("[I]f the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action]."); Sylla, 2023 WL 2667072, at *5 and Sanderson, 2023 WL 2753200, at *9.

## IV.    Investigation

Defendant fails to establish that it followed its policies and procedures with regard to conducting an investigation of Plaintiff's complaints of retaliation and discrimination. See, Sassaman v Gamache, 566 F.3d 307, 315 (2d Cir. 2009) ("The failure of an employer to conduct an adequate investigation or to undertake an appropriate response can constitute evidence in support of a Title VII plaintiff's allegations.") In addition, while the Second Circuit has not held that an arguably insufficient investigation leading to an adverse employment action is, standing alone, sufficient to support an inference of discriminatory intent, "where a plaintiff can point to evidence closely tied to the adverse employment action that could reasonably be interpreted as indicating that discrimination drove the decision, an arguably insufficient investigation may support an inference of discriminatory intent." Id, at 315. Clearly, Plaintiff has abundant evidence "closely tied to the adverse employment action that could reasonably be interpreted as indicating that discrimination drove the decision…." Id. This, coupled with "an arguably insufficient" or incomplete investigation supports "an inference of discriminatory intent." Id.

Here, like the Plaintiff in Sanderson, where the former employer failed to follow its typical practices when conducting the investigation that led to Sanderson's termination, Defendant did not sufficiently investigate Plaintiff's complaint of discrimination. Pl's ¶¶254-60. There was no investigation as to Plaintiff's complaints of May, July, September, October and December 2019 which directly violates Defendant's policy. Id. at ¶¶ 154-58, 159-60, 177-79, 277, 278-79.

## <u>CONCLUSION</u>

For the reasons set forth above, viewing the record in the light most favorable to Plaintiff, as required at the summary judgment stage, the Court should deny Defendant's motion for summary judgment as to Plaintiff's claims of discrimination and retaliation.

New York, New York

Dated: May 26, 2023

Respectfully Submitted,

_____/s/_____

Yuting Li, Esq.
Danny Grace PLLC
*Attorneys for Plaintiff Patricia Schwetz*
225 Broadway, Suite 1200
New York NY 10007
Email: yuting@dannygracepc.com
(516) 748-9848