UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
PATRICIA SCHWETZ,

                      Plaintiff,

             - against -

THE BOARD OF COOPERATIVE
EDUCATIONAL SERVICES OF NASSAU
COUNTY,

                      Defendant.
------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-3396 (PKC) (LGD)

PAMELA K. CHEN, United States District Judge:

Plaintiff Patricia Schwetz ("Plaintiff" or "Schwetz") brings this lawsuit against Defendant the Board of Cooperative Educational Services of Nassau County ("Defendant" or "BOCES"), alleging gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York Labor Law ("NYLL"), and the New York Civil Service Law ("N.Y. Civil Service Law").  Before the Court is Defendant's motion for summary judgment.  Because the Court finds that all of Plaintiff's claims are procedurally defective, it grants Defendant's motion and terminates this action.

## BACKGROUND

### I.    Schwetz's Employment at BOCES[1]

BOCES, a public agency, is the largest board of cooperative education within the State of New York.  (Compl., Dkt. 1 ("Compl.") ¶ 17.)  Schwetz began working at BOCES as a speech

---

[1] Unless otherwise noted, a standalone citation to a party's Local Rule 56.1 statement denotes that this Court has deemed the underlying factual allegation undisputed.  Any citation to a 56.1 statement incorporates by reference the documents cited therein; where relevant, however, the Court may cite directly to an underlying document.  *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 56.1(c)–(d).  The Court construes any disputed facts in the light most favorable to Plaintiff, as the nonmoving party, for

language consultant in or around 1999. (Pl.'s Loc. R. 56.1 Counterstatement, Dkt. 41 ("Pl.'s 56.1") ¶ 1.) On September 6, 2018, after holding several other positions at BOCES, Schwetz was promoted to Executive Director of Special Education. (*Id.* ¶ 3.) For the majority of Plaintiff's time as Executive Director of Special Education and as relevant here, Schwetz's direct supervisor was the Associate Superintendent for Curriculum, Instruction and Education Services ("Associate Superintendent"), Dr. Roxanne Garcia France ("France"). (*Id.* ¶¶ 5–7.) France, in turn, reported to the BOCES District Superintendent, Dr. Robert Dillon ("Dillon").[2] (*Id.*)

As discussed more fully below, on April 23, 2020, BOCES's Board of Directors (the "Board") voted to terminate Schwetz's employment effective July 1, 2020. (*Id.* ¶ 107.) After the vote, on June 2, 2020, Schwetz tendered her resignation as of the earlier date of June 26, 2020. (*Id.* ¶ 111.) The Board accepted Schwetz's resignation. (*Id.* ¶ 112.)

The parties dispute the circumstances giving rise to Schwetz's termination and resignation. The Court briefly recites the relevant facts, construed in the light most favorable to Schwetz.

### A. Hiring of Jeannine Stutz

In April 2019, a BOCES hiring committee—which included Schwetz—held interviews for the position of Supervisor I in the Special Education Department. (*See id.* ¶ 13.) The Supervisor I position required the employee to hold a district-level certificate from the New York State Education Department, such as a School District Leader ("SDL") or School District Administrator ("SDA") certificate. (*Id.* ¶ 22.)

---

purposes of Defendant's summary judgment motion. *See Est. of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016).

[2] The parties refer to BOCES's District Superintendent as both "Dillon" and "Dillion." (*See generally, e.g.*, Dkt. 37 ("Def.'s Mem.") (referring to "Dillon"); Dkt. 40 ("Pl.'s Opp'n") (referring to "Dillion"); Dkt. 44 ("Def.'s Reply") (referring to "Dillon").) For consistency, the Court utilizes "Dillon" herein.

2

Under BOCES's policies, an administrator advancing a candidate for the Supervisor I position must forward the candidate's information to the District Superintendent and Associate Superintendent for their review and an opportunity to meet, interview, and approve the candidate. (*Id.* ¶ 15.) If the District Superintendent and Associate Superintendent approve the candidate, the advancing administrator may tell Human Resources ("HR") to send the candidate a letter of intent regarding BOCES's employment offer. (*See id.* ¶ 16.)

After the hiring committee concluded that Jeannine Stutz ("Stutz") was the best candidate for the Supervisor I position, Schwetz—as Executive Director of Special Education—advanced Stutz's nomination for the position to Dillon. (*See id.* ¶¶ 13, 130–31.) Once Schwetz advanced Stutz as a candidate, BOCES's HR department extended an employment offer to Stutz. (*Id.* ¶ 18.)

The parties dispute who directed HR to extend the offer. (*See* Dkt. 38 ("Def.'s 56.1") ¶ 18 ("Plaintiff . . . initiated the process to have HR send a letter of intent to make an employment offer."); Pl.'s 56.1 ¶ 18 ("Plaintiff did not initiate the process to have HR send a letter of intent to make an employment offer.").) Regardless of who initiated the process, when Dillon and France found out that Stutz had been offered the Supervisor I role, Dillon and France expressed concerns that Stutz was not qualified; BOCES contends that Dillon and France had concerns regarding Stutz's certification and experience, while Schwetz asserts that Dillon challenged Stutz's SDA or SDL credential (but not her experience). (*See* Pl.'s 56.1 ¶¶ 18–19, 25–26.) Ultimately, Dillon determined that Stutz was not qualified for the position because, at minimum, she lacked the necessary human resources experience and the entirety of her relevant career had been in private

schools, not public schools.  (*See id.* ¶¶ 25–26.)[3]  Schwetz was, therefore, directed to rescind Stutz's offer.  (*Id.* ¶ 28.)

Despite not hiring Stutz for the Supervisor I position, BOCES hired her as an Assistant Principal.  (*Id.* ¶ 29.)  Since then, Stutz has been promoted to Principal.  (*Id.*)

**B.      Schwetz's Complaint to Dillon**

Sometime between April 2019 and May 2019, Schwetz expressed concerns to Dillon that rescinding the offer to Stutz was discriminatory.  (*See* Pl.'s 56.1 ¶¶ 9, 128, 140.)[4]  After Schwetz expressed her concerns, in May 2019, Dillon for the first time challenged Schwetz's qualifications for her Executive Director position.  (*Id.* ¶¶ 9, 128.)  He also raised concerns about Schwetz's performance.  (*Id.* ¶¶ 9, 128.)

**C.      The "Whale Shit" Comment**

On or about May 10 or 11, 2019—after Schwetz was directed to rescind the Supervisor I offer to Stutz—Schwetz met with Dillon and France.  (*Id.* ¶¶ 77, 143.)  During the meeting, Dillon was "very red with a grimace of disgust."  (*Id.* ¶ 77.)  Dillon told Schwetz, "[I]n life, there is shit[,] . . . then there is whale shit, and in my book you're under that.  You're lower than whale shit to me."  (*Id.*)

---

[3] Schwetz purports to dispute the reason for Dillon's determination regarding Stutz's qualifications, asserting that she "was told Dr. [Dillon] challenged Ms. Stutz's SDA certification." (*See* Pl.'s 56.1 ¶ 26.)  However, what Schwetz "was told" by someone other than Dillon is not admissible evidence as to the actual reasons behind Dillon's determination.

[4] Plaintiff labels paragraphs 120 to 280 of her Local Rule 56.1 Counterstatement as her "Submission of Additional Material Facts."  (*See* Pl.'s 56.1 ¶¶ 120–280); *see also* Local Rule 56.1(b) (noting that the papers opposing a motion for summary judgment may include "additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried").  Defendant disputes many of those additional statements.  (*See generally* Dkt. 38-2.)  As with the parties' primary Local Rule 56.1 statements, the Court construes any disputed facts in the light most favorable to Plaintiff, as the non-moving party.  *See Est. of Gustafson*, 819 F.3d at 675.

When Schwetz tried to respond, Dillon told Schwetz to "stay quiet," that she "do[es]n't have an opportunity to speak right now," and that she could "get out of [his] office." (*Id.*) He directed Schwetz to keep the incident to herself so that she would have a "soft landing" after he decided whether she should remain in her position. (*See id.*)

### D.    Exclusion from Meetings[5]

In July 2019, at a BOCES leadership retreat in either Syracuse or Saratoga, New York, Dillon asked Schwetz to leave the table where Dillon was sitting. (*Id.* ¶ 88.) Schwetz was the only person required to leave the table. (*Id.* ¶ 89.) After Schwetz left, a male employee took her seat. (*See id.*) At least one other woman, however—France—sat at Dillon's table. (*Id.* ¶ 90.)

At other unspecified times during Schwetz's tenure as Executive Director, Dillon "would meet the male leadership and exclude [Schwetz] from [those] meetings." (Dkt. 46 ("Schwetz Decl.") ¶ 45.) For instance, when Schwetz went to Dillon's office to discuss business, Dillon would ignore her in favor of chatting with male employees. (*Id.* ¶ 44.) On other occasions, Schwetz witnessed and was told by male director-level coworkers that they had had meetings with Dillon without her, even though Schwetz was part of the executive team relevant to the issues discussed. (*Id.* ¶ 51.) Other directors sometimes asked Schwetz why they were present at planning meetings involving Schwetz's department when she was not present. (*Id.* ¶ 52.)

Finally, on an unspecified date, Schwetz was asked to leave a meeting between Dillon and Selma Stoddard, BOCES's HR Compliance Officer and Attorney for Employee Relations, because they needed to discuss a topic which did not concern Schwetz. (Pl.'s 56.1 ¶¶ 79, 83.)

---

[5] As discussed in more detail *infra*, Schwetz raised several of these allegations in her brief opposing BOCES's motion for summary judgment, but did not include these allegations in her complaint or in her filing with the Equal Employment Opportunity Commission ("EEOC"). (*See generally* Dkt. 1; Dkt. 42-90.)

5

### E.   Usage of Modular Classrooms

On August 29, 2019, Schwetz participated in a tour of BOCES facilities with members of the BOCES Board. (*See* Schwetz Decl. ¶¶ 76–77.) During the tour, a Board member asked Schwetz if BOCES's modular units—which did not have restrooms and could only be accessed by walking outside—would be used by students. (Pl.'s 56.1 ¶ 69; Schwetz Decl. ¶ 77.) Given that Dillon had previously approved use of the modular units for therapy sessions, Schwetz stated that classes would not use the modular units, but that individual therapy sessions might, though such usage would be minimized. (Schwetz Decl. ¶¶ 76–77.) The Board member "visibly disagreed" with Schwetz's statements regarding the usage of modular units. (*Id.*)

Schwetz conveyed the Board member's concerns to Dillon. (Pl.'s 56.1 ¶ 239.) Even though Schwetz's description of the usage of modular classrooms had been pursuant to Dillon's earlier "directive," Dillon told Schwetz she "better fix it." (Schwetz Decl. ¶¶ 78–80; *see* Def.'s 56.1 Resp., Dkt. 38-2 ¶ 239.) Thus, at Dillon's behest, Schwetz made a statement at the Board meeting that night that students would not be utilizing the modular classrooms. (*See* Schwetz Decl. ¶¶ 78–80.)

### F.   Submission of APPR Data

In approximately August to October 2019, BOCES received an error message after submitting data pursuant to the New York State Education Department's Annual Performance Plan Review ("APPR"). (Pl.'s 56.1 ¶¶ 48, 53, 56.) Peter Nicolino ("Nicolino"), an HR employee, proposed that the data be resubmitted to the State without correcting the errors. (*Id.* ¶ 217; Schwetz

6

Decl. ¶ 69; Dkt. 42-1 ("Schwetz Dep.") at 175:7–177:22.)[6]  Schwetz opposed Nicolino's proposal and reported it to France.  (Schwetz Decl. ¶¶ 69–70.)

Ultimately, Schwetz was punished for proposing the submission of incorrect data.[7]  (*See* Pl.'s 56.1 ¶ 62; Dillon Dep. at 118:10–23.)  Nicolino, who had proposed resubmitting the erroneous data, was not disciplined.  (Schwetz Decl. ¶ 70.)

### G. Documentation of Student Medicaid Eligibility

Finally, in approximately October 2019, Schwetz asked HR to investigate allegations that a BOCES therapist had prepared a therapy note for a session that never occurred and had designated the student as eligible for Medicaid—meaning that the student's school district could receive funding for the therapy that BOCES provided—when the student was ineligible.  (*See* Pl.'s 56.1 ¶¶ 188–89; Schwetz Decl. ¶¶ 55–56; Schwetz Dep. at 202:8–15, 209:6–210:17.)  Between December 5 and December 12, 2019, new information showed that the student was not, in fact, Medicaid-eligible.  (Pl.'s 56.1 ¶ 35.)  Schwetz was disciplined; although the therapist was issued a counseling memorandum and was advised on best practices for filling out the relevant paperwork, neither the therapist nor any other employee was disciplined.  (Schwetz Decl. ¶ 59; *see* Pl.'s 56.1 ¶ 36.)

## II. Schwetz's Reassignment and Termination and Ensuing Proceedings

On January 31, 2020, Dillon informed Schwetz that her employment with BOCES would be terminated by the end of the school year.  (Pl.'s 56.1 ¶¶ 99, 108.)  On February 3, 2020, Dillon reassigned Schwetz to a new building and relieved her of her responsibilities as Executive Director

---

[6] BOCES partially disputes Plaintiff's claim, asserting that "either Plaintiff or . . . Nicolino" proposed that the data should be submitted without correction.  (Defs.' 56.1 ¶ 61.)

[7] The relevant data pertained to the Special Education department, of which Schwetz was the Executive Director.  (Pl.'s 56.1 ¶ 62 (citing Dkt. 42-24 ("Dillon Dep.") at 118:10–23).)

7

of Special Education, although she retained the Executive Director title. (*Id.* ¶ 94.) That same day, Dillon sent a series of emails to BOCES and other school district personnel announcing Schwetz's reassignment. (*See* Dkt. 48-13 at ECF 2–25;[8] *see also* Schwetz Dep. 259:13–260:6 (implying that Dillon announced Schwetz's termination by email in February 2020); Dkt. 42-90 (implying that Dillon announced Schwetz's termination by email prior to April 23, 2020).)

On March 11, 2020, Schwetz, through counsel, wrote a letter to the Board—entitled her "Complaint of Reprisal"—objecting to her termination. (Pl.'s 56.1 ¶ 114; Dkt. 48-16 at 1–5.) Nonetheless, on March 18, 2020, Schwetz was formally notified by letter that Dillon would recommend her termination to the Board. (Pl.'s 56.1 ¶ 103.) On March 19, 2020, Schwetz acknowledged her receipt of the letter and requested notice of the reasons why Dillon intended to recommend her termination. (*Id.* ¶ 105.) Dillon provided those reasons in a letter dated March 26, 2020, which explained that Dillon had "[c]oncerns about a lack of judgment in [Schwetz's] hiring of personnel," that Schwetz "[f]ail[ed] to follow directives and protocol regarding the hiring of personnel," that Schwetz "[p]resent[ed] . . . inaccurate data/information to supervisors," that "[b]ut for [the] intervention of supervisors," Schwetz's department "would have provided the District Superintendent with inaccurate data/information to certify and present to the State," that Schwetz did not "meet[] expectations relative to programmatic planning for students and staff," and that Schwetz did not "demonstrate[] future growth potential due to [her] failure to address deficiencies." (*Id.* ¶ 106; Dkt. 48-15 at ECF 1.)

At its April 23, 2020, meeting, the Board voted to terminate Schwetz's probationary employment, effective July 1, 2020. (Pl.'s 56.1 ¶ 107.) After the Board's vote but before her

---

[8] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

termination was to become effective, on June 2, 2020, Schwetz submitted a letter of resignation. (*Id.* ¶ 111.)  In that letter, Schwetz identified June 26, 2020, as the effective date of her resignation. (*Id.*)  On June 18, 2020, the Board approved Schwetz's resignation.  (*Id.* ¶¶ 111–12.)

Eight and a half months later, on March 15, 2021, Schwetz filed a charge with the EEOC. (*Id.* ¶ 118; *see* Dkt. 42-90.)  In her EEOC charge, Schwetz asserted that she was "discriminated against and subjected to harassment because [she is] a female," and that she was subjected to discrimination from May 2019 to July 1, 2020.  (Dkt. 42-90 at ECF 2–3.)  Schwetz complained about the circumstances surrounding Stutz's hiring, the "whale shit" comment, her reassignment to a lower position, that she was "devalued" for her performance "without cause in an improper way in or around February 2020," and that Dillon sent a written communication to the entire county, announcing Schwetz's removal from her position.  (*Id.* at ECF 4–5.)  On March 19, 2021, the EEOC issued a "Right to Sue" letter to Schwetz.  (Pl.'s 56.1 ¶ 119.)

On June 15, 2021, Schwetz filed the instant complaint, alleging discrimination and retaliation relating to Stutz's hiring, the "whale shit" comment, the submission of APPR data, and the inaccurate student Medicaid-eligibility report.  (*See generally* Compl.)  Schwetz's complaint also alleged that "Defendant . . . continually and strategically omitted Plaintiff from meetings where male directors and/or subordinates were included," and that "the District Superintendent even sent a written communication to the entire county of School District Superintendents and Directors of Special Education announcing Plaintiff's removal from her position and that she was being replaced, ruining Plaintiff's reputation and the possibility of being re-employed in her field." (*Id.* ¶¶ 41, 43.)  On September 10, 2021, BOCES answered the complaint.  (Dkt. 11.)

On February 10, 2023, BOCES moved for summary judgment.  (Dkt. 36.)  On May 26, 2023, Schwetz served her opposition brief.  (Dkt. 40 at 1.)  In that brief, Schwetz mentioned several

9

additional facts that she argues support her claims: her exclusion from certain meetings after she began to complain about her treatment, that Dillon denied her reference letters in her effort to seek a different job, and that she was "blacklisted" in her employment search. (*See id.* at 5–6, 12, 21.) BOCES filed its reply and the motion was fully briefed as of June 23, 2023. (Dkt. 44.)

## LEGAL STANDARD

Summary judgment is proper only where "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute between the parties will not defeat a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rather, a genuine issue of material fact exists "where the evidence is such that a reasonable jury could decide in the nonmovant's favor." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74 (2d Cir. 2016) (quoting *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014)). The Court resolves all factual ambiguities and draws all permissible inferences in favor of the nonmoving party. *See Est. of Gustafson*, 819 F.3d at 675.

Initially, the movant must demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A movant may demonstrate the absence of a material factual dispute by pointing to the lack of evidence in support of an essential element of the plaintiff's claim. *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023) (quoting *CILP Assocs., L.P v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013)). Once the movant has met its burden, the nonmovant must present specific facts showing that there is a genuine issue for trial. *Id.* (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)). If "little or no evidence may be found in support of the nonmoving party's case," summary judgment is proper. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24

10

(2d Cir. 1994); *accord Ockimey v. Hempstead*, 425 F. App'x 45, 45 (2d Cir. 2011) (summary order).

## DISCUSSION

Although BOCES advances a number of arguments in support of its motion, the Court addresses only the arguments that Schwetz's claims are either time-barred or procedurally barred, which the Court finds dispositive of BOCES's motion in itself, and requires dismissal of all of Plaintiff's claims.

### I. Plaintiff's Title VII Claims Are Time-Barred

Before filing a Title VII claim in federal court, a plaintiff must first file a timely complaint with the EEOC. *See Buon v. Spindler*, 65 F.4th 64, 77 (2d Cir. 2023) (quoting *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)). In New York, a plaintiff must file with the EEOC within 300 days of the alleged discrimination. *See id.* (quoting *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599 (2d Cir. 1999) (per curiam)). "Claims concerning discrete acts outside this window will be time[-]barred." *Id.* (citing *Nat'l R.R. Passenger v. Morgan*, 536 U.S. 101, 109–15 (2002)). "A discrete act is one that 'occurred' on the day that it 'happened' and can include 'termination, failure to promote, denial of transfer, or refusal to hire.'" *Id.* (quoting *Morgan*, 536 U.S. at 110, 114) (internal quotation marks omitted). Whether incidents of alleged employment discrimination are considered timely is a matter of law for the court to determine. *See Wu v. Good Samaritan Hosp. Med. Ctr.*, No. 17-CV-4247 (SJF) (ARL), 2019 WL 2754865, at *3 (E.D.N.Y. July 2, 2019), *aff'd*, 815 F. App'x 575 (2d Cir. 2020) (summary order); *Pressley v. City of New York*, No. 11-CV-3234 (PKC) (RER), 2015 WL 13730699, at *7 (E.D.N.Y. Aug. 27, 2015), *R. & R. adopted*, 2016 WL 1271480 (E.D.N.Y. Mar. 31, 2016).

11

Where a plaintiff alleges that the termination of her employment violated Title VII, "[her] claim is actionable on the date 'when the employer notifies the employee [s]he is fired, not on the last day of [her] employment.'" *Shultz v. Congregation Shearith Isr. of N.Y.*, 867 F.3d 298, 305 (2d Cir. 2017) (quoting *Green v. Brennan*, 578 U.S. 547, 564 (2016)); *see Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (stating that EEOC filing limitations period commences "at the time the [termination] decision was made and communicated to" the employee). Although the "continuing violation doctrine" creates an exception to the 300-day rule if "specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice," "an untimely discrete act claim cannot be pulled into the limitations period by a claim premised on a continuing course of conduct, even if the course of conduct includes that discrete act." *King v. Aramark Servs. Inc.*, 96 F.4th 546, 559, 560 (2d Cir. 2024) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996)) (citing *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)). Thus, a continuing violation may not be based merely on the effects of an earlier discriminatory act. *See Ricks*, 449 U.S. at 258. Further, a plaintiff alleging a continuing violation must clearly assert the alleged violation in both her EEOC filing and in the complaint. *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir. 1985).

BOCES argues that Schwetz's Title VII claims are time-barred because all of BOCES's allegedly wrongful conduct occurred before May 19, 2020, the 300-day cut-off date preceding Schwetz's EEOC claim-filing on March 15, 2021. (Def.'s Mem. at 10–11.) The Court agrees.

The undisputed evidence at summary judgment shows that BOCES's revocation of Stutz's Supervisor I offer took place in April and May 2019, (*see* Pl.'s 56.1 ¶¶ 13, 18); Dillon made his "whale shit" comment in May 2019, (*see id.* ¶ 77); Schwetz began to be excluded from meetings

12

in mid-May 2019, (*see* Schwetz Dep. at 121:20–122:6); Schwetz was chastised for her comments regarding modular classrooms in approximately August 2019, (*see* Pl.'s 56.1 ¶ 72); Schwetz was chastised for the submission of APPR data in October 2019, (*see* Schwetz Dep. at 170:8–171:20); and Schwetz was chastised regarding falsified Medicaid eligibility documentation in December 2019, (*see* Pl.'s 56.1 ¶ 33). These events culminated in Dillon's late-January 2020 statements to Schwetz that she would be terminated from her position at the end of the school year. (*See* Pl.'s 56.1 ¶ 92.) All of these events occurred before May 19, 2020, that is, more than 300 days before Schwetz filed her EEOC claim on March 15, 2021. Thus, Schwetz's Title VII claims based on these events are untimely.

Similarly, Schwetz's claims of discrimination or retaliatory termination are time-barred. Although Schwetz's employment was not terminated until July 1, 2020, Schwetz's termination claim became actionable on the date when BOCES notified her that she was fired, not on the last day of her employment.[9] *See Shultz*, 867 F.3d at 305. Schwetz was notified orally by Dillon on January 31, 2020, that she would be terminated, before the May 19, 2020, cut-off date. (Pl.'s 56.1 ¶ 99; *see also* Dkt. 48-14 at ECF 2 (letter dated January 31, 2020, indicating Schwetz's reassignment in accordance with meeting held that morning and indicating hand delivery of the letter to Schwetz).) Thus, her claims of discrimination or retaliatory termination were not timely filed. And even if the EEOC charge filing period ran from the date the Board approved Schwetz's termination, Schwetz's claims would still be time-barred, as the Board voted to terminate Schwetz

---

[9] After BOCES's Board voted to terminate Schwetz's employment effective July 1, 2020, Schwetz submitted a resignation letter effective June 26, 2020, which the Board accepted. (*See* Pl.'s 56.1 ¶ 111.) For purposes of this discussion—which pertains to what Schwetz knew to be the date that she would ultimately be terminated, and when that termination was communicated to her—the Court refers to the conclusion of Schwetz's employment as the "termination" of her employment rather than Schwetz's "resignation" of her employment.

on April 23, 2020, prior to the EEOC charge filing cutoff date of May 19, 2020. (*See* Pl.'s 56.1 ¶ 107; *see also* Dkt. 48-15, at ECF 4 (March 18, 2020, letter from Dillon to Schwetz stating that Dillon's recommendation to terminate Schwetz's probationary appointment as Executive Director of Special Education would be voted on at April 23, 2020, Board meeting); *id.* at ECF 3 (March 19, 2020, response letter from Schwetz to Dillon indicating Schwetz's receipt of March 18, 2020, letter).)

In her opposition papers, Schwetz asserts for the first time that she was denied reference letters by "Mr. Widmer" and "blacklisted" by Dillon after she was terminated.[10] (*See* Pl.'s Opp'n at 21.)[11] However, these allegations do not constitute continuing violations that make her claims timely, for three reasons. First, Schwetz advances these claims for the first time in her brief opposing summary judgment. "[T]he central purpose of a complaint is to provide the defendant with notice of the claims asserted against it," and "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint[.]" *Ball v. Marriott Int'l, Inc.*, 627 F. Supp. 3d 296, 315 (S.D.N.Y. 2022) (first quoting *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006); then quoting *Smith v. City of New York*, 385 F. Supp. 3d 323, 338 (S.D.N.Y. 2019)). Thus, "[m]erely raising [an] argument for the first time in opposition to a motion for summary judgment is inadequate." *Camoia v. City of New York*, 787 F. App'x 55, 58 (2d Cir. 2019) (summary order). Because Schwetz raises these arguments for the first time in her brief

---

[10] Dillon is not a defendant in this action. It is unclear whether Schwetz is seeking to attribute Dillon's alleged denials to BOCES, the sole defendant. Even if Dillon's alleged denials could be attributed to BOCES, Schwetz's arguments still fail for the reasons described herein.

[11] Schwetz's brief asserts that she was blacklisted and denied reference letters "[a]fter the termination," but "Plaintiff then was terminated." (Pl.'s Opp'n at 21.) Given that Schwetz's citations in support of her assertion that she "then was terminated" do not bear on the timing of her termination, the Court construes Plaintiff's brief as alleging that Schwetz was blacklisted and denied reference letters after her termination.

14

opposing summary judgment—instead of in her complaint, which BOCES answered—the Court does not address the merits of these arguments. *See Rojo v. Deutsche Bank*, 487 F. App'x 586, 588–89 (2d Cir. 2012) (summary order) (refusing to address merits of claims raised for the first time on summary judgment); *see also, e.g.*, *Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 371 n.8 (S.D.N.Y. 2014) (deeming additional instances of discrimination raised for first time in opposition to summary judgment as untimely and waived); *Preuss v. Kolmar Lab'ys, Inc.*, 970 F. Supp. 2d 171, 197 (S.D.N.Y. 2013) (declining to consider factual allegations raised for first time in opposition to summary judgment); *Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010) (noting that "courts generally do not consider claims or completely new theories of liability asserted for the first time in opposition to summary judgment" (quoting *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701–02 (2d Cir. 2010) (summary order)) (collecting cases)).

Second, even if the Court were to consider whether Schwetz's denial of reference letters and blacklisting were "reasonably related" to her EEOC claim so as to render her claims timely, "'reasonably related' retaliation claims are excused from the exhaustion requirement *only* if they arise during the pendency of an EEOC investigation *or* a timely filed federal case." *Duplan v. City of New York*, 888 F.3d 612, 624 (2d Cir. 2018); *Sosa v. N.Y.C. Dep't of Educ.*, No. 18-CV-411 (PKC), 2020 WL 1536348, at *4 (E.D.N.Y. Mar. 31, 2020) ("Since these acts occurred before Plaintiff filed her January 2017 [New York City Commission on Human Rights] Charge, they cannot be reasonably related to it."). Here, Schwetz's claimed denials of reference letters and blacklisting all relate to events that occurred before she filed her EEOC charge or this case. Accordingly, even if Schwetz's new arguments were reasonably related to her remaining Title VII claims, they would still be untimely asserted in this case. *See Duplan*, 888 F.3d at 624; *Sosa*, 2020 WL 1536348, at *4.

Third and finally, Schwetz's newly asserted claims are not viable under an alternative "continuing violation" theory. (*Cf.* Pl.'s Opp'n at 11–12, 14.) "The continuing violation exception is not available because [Schwetz] has only alleged a series of discrete acts and has not plausibly alleged that those acts were in furtherance of any ongoing policy of discrimination . . . . Nor is the related exception for a hostile work environment claim available—the discrete, isolated incidents she alleges are not enough to create an objectively hostile work environment." *Betterson v. HSBC Bank USA, N.A.*, 661 F. App'x 87, 89 n.1 (2d Cir. 2016) (summary order) (first citing *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–57 (2d Cir. 2012); then citing *Petrosino v. Bell Atl.*, 385 F.3d 210, 221–23 (2d Cir. 2004)). Here, Schwetz has failed to allege any ongoing policy of discrimination relating to her claimed denial of reference letters and blacklisting. (*See, e.g.*, Pl.'s Opp'n at 5–6.) Instead, Schwetz's allegations amount to discrete acts, which are not actionable. *See Betterson*, 661 F. App'x at 89 n.1; *see also Perez v. City of New York*, No. 23-CV-447 (CM), 2024 WL 898943, at *8–9 (S.D.N.Y. Feb. 29, 2024) (noting that "the continuing violations doctrine is 'disfavored' outside of a hostile work environment situation, and should only be applied in 'compelling circumstances,'" which were not present where "[a]ll Plaintiffs have done . . . is aggregate discrete acts of discrimination" (quoting *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 279 (S.D.N.Y. 2019))). As such, her claims are time-barred.

As for Schwetz's claim that Dillon retaliated against her by emailing the entire county not to hire her, the evidence before the Court indicates merely that Dillon emailed BOCES and other county personnel to announce Schwetz's reassignment. (*Compare* Compl. ¶ 43, *with* Dkt. 48-13 at ECF 2–25; *see also* Dillon Dep. at 107:7–17 (testifying that the email "was just a general announcement"); Schwetz Dep. at 260:1–6 (testifying that Schwetz's "reputation was shot" after the email "went out to the entire county," but not discussing the contents of said email).) In any

16

event, Dillon sent the email on February 3, 2020—prior to the May 19, 2020, cutoff—rendering Schwetz's claims based on that email time-barred. (Dkt. 48-13 at ECF 2); *see Buon*, 65 F.4th at 77. And as for Schwetz's claim that Dillon discriminated against her by excluding her from meetings, the evidence at summary judgment indicates that such meetings took place before Schwetz's responsibilities as Executive Director were removed, i.e., prior to February 3, 2020. (*See, e.g.*, Schwetz Decl. ¶¶ 44–45, 51–52 (discussing Schwetz's exclusion from meetings during her tenure as Executive Director, i.e., prior to February 3, 2020); *cf.* Pl.'s Opp'n at 5–6 (indicating that Schwetz was excluded from meetings "for around six months" after she complained to Dillon in April or May 2019 that rescinding Stutz's offer was discriminatory, i.e., that the exclusion from meetings took place before November 2019 at the latest).) Schwetz's discrimination claim based on her exclusion from meetings is therefore time-barred as well.

The Court need not, and therefore does not, reach the merits of Schwetz's Title VII claims, which are time-barred, and grants summary judgment for BOCES on those claims.

## II.     Plaintiff's State Law Claims Are Procedurally Barred

BOCES also argues that Schwetz's state law claims under the NYSHRL, NYLL, and N.Y. Civil Service Law are all barred by failure of a condition precedent because Schwetz failed to file a sufficient notice of claim within 90 days of the accrual of her claims, as required by statute. The Court agrees.

> New York Education Law § 3813 provides:
>
> No action or special proceeding, for any cause whatever, except as hereinafter provided, . . . shall be prosecuted or maintained against any school district, board of education, [or] board of cooperative educational services, . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or

> pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

N.Y. Educ. Law § 3813(1); *see Putkowski v. Warwick Valley Cent. Sch. Dist.*, 363 F. Supp. 2d 649, 653 (S.D.N.Y. 2005) (interpreting "three months" as 90 days); *Mansuetta v. Clarkstown Cent. Sch. Dist.*, No. 11-CV-649 (VB), 2012 WL 5992171, at *8 (S.D.N.Y. Nov. 13, 2012) (same); *Newman v. Leroy Cent. Sch. Dist.*, No. 07-CV-6299 (MAT), 2008 WL 974699, at *2 (W.D.N.Y. Apr. 8, 2008) (same). Where a plaintiff fails to file a notice of claim that complies with the statute's requirements, the plaintiff's claims may be dismissed as a matter of law. *See Dingle v. City of New York*, 728 F. Supp. 2d 332, 348–49 (S.D.N.Y. 2010) ("Federal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement[.]"); *Jones-Khan v. Westbury Bd. of Educ.*, No. 21-CV-3908 (JMA) (JMW), 2022 WL 280646, at *8 (E.D.N.Y. Jan. 31, 2022) (dismissing NYSHRL claims on motion to dismiss "because Plaintiff did not comply with New York's notice of claim requirement"); *Peritz v. Nassau Cnty. Bd. of Coop. Educ. Servs.*, No. 16-CV-5478 (DRH) (AYS), 2019 WL 2410816, at *4 (E.D.N.Y. June 7, 2019) (dismissing NYSHRL claims against BOCES, in ruling on motions *in limine*, due to failure to demonstrate timely service of statutory notice of claim).

Here, Schwetz's "Complaint of Reprisal" letter to the Board alleged that she had suffered an adverse employment action as a result of Stutz's hiring, Schwetz's opposition to the submission of false APPR data to the state, and her opposition to false reporting of student Medicaid eligibility and session notes. (*See* Dkt. 48-16 at 2–4.) It further complained about Dillon's "whale shit" comment and requested "that the Board review [Schwetz's] complaint and appoint a review officer or panel to investigate this claim, pursuant to [BOCES's internal] policy 9645." (*Id.* at 2–4.) Schwetz's "Complaint of Reprisal" did not, however, convey that Schwetz believed she had suffered gender discrimination or retaliation, or make any allegations that she was treated

18

differently because of her gender.  (*See generally id.*); *see also Mazzilli v. City of New York*, 545 N.Y.S. 2d 833, 835 (N.Y. App. Div. 1989) ("Causes of action for which a notice of claim is required which are not listed in the plaintiff's original notice of claim may not be interposed."); *cf. Kushner v. Valenti*, 285 F. Supp. 2d 314, 315–16 (E.D.N.Y. 2003) (denying request to serve late notice of claim for gender discrimination where plaintiff's earlier EEOC charge alleged age discrimination, but not gender discrimination), *abrogated on other grounds by Brtalik v. S. Huntington Union Free Sch. Dist.*, No. 10-CV-10 (LDW), 2010 WL 3958430, at *5 (E.D.N.Y. Oct. 6, 2010).  And although Schwetz's "Complaint of Reprisal" sought an internal review pursuant to BOCES policies, it did not allege any violation of law.  (*See generally* Dkt. 48-16.) Schwetz's Complaint of Reprisal, therefore, did not adequately apprise BOCES of the nature of Schwetz's claims—namely, gender discrimination and retaliation—or, for that matter, *any* violation of law, and therefore does not fulfill Section 3813's requirement to put BOCES on notice of her instant claims.  *See Solomon v. Southampton U.F.S.D.*, No. 08-CV-4822 (SJF) (ARL), 2010 WL 3780696, at *3 (E.D.N.Y. June 24, 2010) ("Where a party has filed a claim with an administrative agency sounding in a particular type of discrimination, the claim is insufficient to satisfy the state law notice requirement as to a different type of discrimination claim."), *R. & R. adopted*, 2010 WL 3780976 (E.D.N.Y. Sept. 17, 2010).

\*     \*     \*

In light of the foregoing, the Court need not reach BOCES's arguments that Schwetz's NYLL claims are under a provision that does not apply to BOCES and that Schwetz's N.Y. Civil Service Law claims are under a provision that does not apply to Schwetz, nor BOCES's argument that the Court should decline to exercise supplemental jurisdiction over Schwetz's state law claims.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2024
       Brooklyn, New York